| | |
|---|---|
| EARL EUGENE GOINS | ) C/A No. 4:08-3916-RBH-TER |
| | ) |
| Petitioner; | ) |
| | ) |
| vs. | ) Report and Recommendation |
| | ) |
| ROBERT STEVENSON, | ) |
| Warden, Broad River Correctional Institution, | ) |
| | ) |
| Respondents. | ) |

_____

Petitioner, Earl Eugene Goins ("Petitioner/Goins"), a *pro se* prisoner, seeks habeas relief pursuant to 28 U.S.C. §2254. This matter is before the Court on the Respondent's motion for summary judgment (document # 20).[1]

The Petitioner filed this petition for a writ of habeas corpus on December 4, 2008. On May 27, 2009, the Respondent filed a motion for summary judgment, along with supporting memorandum and exhibits. The undersigned issued an Order filed May 28, 2009, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition (doc.#29).

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I.  PROCEDURAL HISTORY

The procedural history as set out by the Respondent has not been seriously disputed by the Petitioner. Therefore, the undisputed procedural history as stated by the Respondent is set forth herein.

Petitioner is presently confined to the South Carolina Department of Corrections pursuant to Orders of Commitment from the Clerk of Court from York County. At the April 1999 term, the York County Grand Jury indicted Petitioner for second degree criminal sexual conduct ("CSC") with a minor (99-GS-46-1367), contributing to the delinquency of a minor (99-GS-46-1368), second degree CSC with a minor (99-GS-46-1369), lewd act upon a child under the age of 16 years (99-GS- 46-1370), lewd act on a child under the age of 16 years (99-GS-46-1371). At the January 2000 term, the York County Grand Jury indicted Petitioner for contributing to the delinquency of a minor (00- GS-46-0209) and lewd act upon a child under the age of 16 years (00-GS-46-0210). At the April 2000 term, the York County Grand Jury indicted Petitioner for second degree CSC with a minor (00- GS-46-1337), and lewd act upon a child under the age of 16 years (00-GS-46-1348).  Petitioner was represented at the trial level by Leland Greeley, Esquire, and John Rhea, Esquire.

Petitioner initially went to trial before the Honorable Henry Floyd and a jury on April 24, 2000. However, on April 25, 2000, an inadmissible exhibit was inadvertently displayed to the jury, and Judge Floyd granted a mistrial.

That afternoon, a new jury was selected and the case went forward. On April 27, 2000, the jury convicted Petitioner of 99-1367 (CSC), 99-1369(CSC), 99-1370 (lewd act), 99-1371 (lewd act), 00-0210 (lewd act), and 00-1348 (lewd act). The jury acquitted Petitioner of 99-1368 (contributing), 00-0209 (contributing), and 00-1347 (CSC). {PCR App.

603-04}.

Judge Floyd sentenced Petitioner to consecutive sentences of twenty (20) years a piece on 99- 1367 and 99-1369. {PCR App. 616-17; 627, 642}. He sentenced Petitioner to concurrent sentences of fifteen (15) years on 99-1370 {PCR App. 621}, five (5) years on 99-1371 {PCR App. 624}, fifteen (15) years on 00-0210 {PCR App. 638}, and fifteen (15) years on 00-1348 {PCR App. 640}.

A timely notice of appeal was filed with the South Carolina Court of Appeals. Assistant Appellate Defender Katherine Carruth Link was appointed to represent Petitioner in his direct appeal. On November 15, 2001, Link filed with the South Carolina Court of Appeals a Final Brief of Appellant, in which she raised the following issues:

1.    Did the trial court abuse its discretion in refusing the defense motion to sequester the witnesses?

2.    Did the trial court err in admitting evidence of other alleged "bad acts" by appellant?

The State filed a Final Brief of Respondent dated November 19, 2001, and Link followed with a Final Reply Brief of Appellant. On January 21, 2003, the South Carolina Court of Appeals issued an opinion in which it affirmed the convictions and  sentences. State v. Goins, Unpub. Op. No. 03-UP-60 (SC. Ct. App. January 21, 2003). On February 6, 2003, the state court of appeals granted Petitioner's *pro se* request to relieve counsel, and Petitioner subsequently filed a *pro se* Petition for Rehearing. On March 20, 2003, the state court of appeals denied the *pro se* petition for rehearing.

On November 20, 2003, the state court of appeals issued an order recalling the Remittitur and denying Petitioner's request for appointment of counsel. Petitioner then filed on January 8, 2004, a *pro se* Petition for Writ of Certiorari with the South Carolina Supreme

Court. The State filed a Return to the Petition for Writ of Certiorari on January 9, 2004. On October 6, 2004, the state supreme court denied the petition for writ of certiorari, and the Remittitur was sent down on November 11, 2004.

Petitioner next filed his Application for Post-Conviction Relief ("APCR") on November 8, 2004 (04-CP-46-2898), in which he raised the following issues:

Ineffective Assistance of Counsel.

{PCR App. 663}. The State filed a Return on September 14, 2005. {PCR App. 682}. Attorney Charles T. Brooks, III, was appointed to represent Petitioner in his PCR. On February 20, 2006, he filed an Amended Application for Post-Conviction Relief, in which he asserted the following issues:

1.   The Trial Counsel rendered ineffective assistance of Counsel, by failing to object to the second trial going forward; and failed to move for continuance to allow opportunity to get transcript.

2.   The Trial Counsel rendered ineffective assistance of Counsel, because the first and second trial was one day after the other and the counsel should have moved for a continuance.

3.   That the Applicant alleges and believes that he may have had the same jurors from his first trial on the second trial.

4.   The Trial Counsel rendered ineffective assistance of Counsel, due to the fact that the counsel never used defense witness, who was another boy, who went on trips with the Applicant and victim, who said nothing criminal happened.

5.   The Trial Counsel rendered ineffective assistance of Counsel, the Applicant was seen by a Psychologist, which was never used at the trial.

6.   The Trial Counsel rendered ineffective assistance of Counsel, because Applicant had no witnesses at the trial.

7.   The Trial Counsel rendered ineffective assistance of Counsel, the counsel never raising objection to the search, due to the Applicant not

being present in residence when served with the warrant.

8. That the Applicant alleges that at the bond hearing the victim's father stated in an open Court that he was present when police executed the search of the Applicants' residence.

9. That the Applicant alleges and believes that at the trial Detective Jerry Hoffman indicated that only he and two other police officers were at the Applicant's residence during the search.

10. That the Applicant alleges and believes that the fact that John Rhea, Esquire brought Leland Greely, Esquire in on the case, when John Rhea was appointed. The trial Counsel did not explain his reason to the Applicant for bringing Leland Greely in on the case.

11. The Trial Counsel rendered ineffective assistance of Counsel, by not objecting to evidence the Solicitors used at the trial that was not disclosed pursuant to discovery.

12. The Trial Counsel rendered ineffective assistance of Counsel, by failure to impede credibility of the victim, who stated in the first trial that the Applicant did not do anything to the victim but in the second trial the same victim stated he committed a sexual act.

13. That the Applicant believes that the Trial Counsel did not represent him to the fullest or the best of Trial counsel's ability.

14. That the Applicant re-asserts all arguments in his memorandum previously filed on November 9, 2004 in York Clerk of Court, including all allegations against Trial Counsel and Appellate Counsel.

{PCR App. 672}. Brooks filed another Amended Application on April 27, 2006, in which he

asserted the following issues:

1. The Applicant asserts that the Appellate Counsel was ineffective for not raising and arguing the issue of double jeopardy for the mistrial from the first trial being a bar to the Applicant being retried.

2. That the Applicant re-asserts all arguments in his memorandum previously filed, including all allegations against Trial Counsel and Appellate Counsel.

{PCR App. 670}.

On May 16, 2006, an evidentiary hearing was held before the Honorable John C. Hayes, III. {PCR App. 687}. Petitioner was present and represented by attorney Brooks. Petitioner called both trial counsel as well as himself to testify; the State called no witnesses. On May 18, 2006, Judge Hayes filed an Order in which he rejected the claims for relief. {PCR App. 676}.

A notice of appeal was filed with the South Carolina Supreme Court from Judge Hayes' Order. Assistant Appellate Defender Robert Pachak, of the South Carolina Office of Appellate Defense, represented Petitioner in the PCR appeal. On January 11, 2007, Pachak filed a "no merit" Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which he raised the following issue:

Whether defense counsel was ineffective in failing to call witnesses?

The State filed a letter Return to the Johnson Petition on January 18, 2007. Petitioner then filed a pro se "Submission of Issues for Consideration", dated February 20, 2007, in which he raised the following issues:

1.    First, I wish to assert that appellate counsel was ineffective for not raising and arguing the issue of double jeopardy for the mistrial from the first trial being a bar to this applicant being retried. (sic)

2.    The next issue that I wish to raise is that all issues and arguments asserted in the memorandum previously filed, including all allegations against trial counsel and appellate counsel, should also be reviewed for harmful error. (sic)

On May 29, 2008, the state court of appeals denied the certiorari petition after Johnson review, and the Remittitur was issued on June 16, 2008.

## II. HABEAS ALLEGATIONS

Petitioner filed his petition on January 30, 2009, in which Petitioner raises the following allegations, quoted verbatim:

Ground One:         Ineffective assistance of trial counsel

Supporting Facts:   There were numerous allegations, along with the facts, of why petitioner contends he was not represented ineffectively[sic]. I am therefore including a copy of the PCR allegations in support of my claims here.

Ground Two:         Did the trial court abuse its discretion in refusing the defense motion to sequester the witnesses?

Supporting Facts:   none

Ground Three:       Did the trial court err in admitting evidence of other alleged "bad acts" by appellant.

Supporting Facts:   none

(Petition, Doc. #1).

## III.  SUMMARY JUDGMENT

As stated above, on May 27, 2009, the Respondent filed a return and memorandum of law in support of the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of

<u>Social Servs.</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court

assume the existence of a genuine issue of material fact where none exists.   If none can

be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is

appropriate.   Once the moving party makes this showing, however, the opposing party

must respond to the motion with "specific facts showing that there is a genuine issue for

trial."  The opposing party may not rest on the mere assertions contained in the pleadings.

Fed. R. Civ. P. 56(e);  <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment

where both parties have had ample opportunity to explore the merits of their cases and

examination of the case makes it clear that one party has failed to establish the existence

of an essential element in the case, on which that party will bear the burden of proof at trial.

<u>See</u> Fed. R. Civ. P. 56(c).   Where the movant can show a complete failure of proof

concerning an essential element of the non-moving party's case, all other facts become

immaterial because there can be "no genuine issue of material fact."  In <u>Celotex</u>, the Court

held the defendants were "entitled to judgment as a matter of law" under Rule 56(c)

because the etitioner had failed to make a sufficient showing on essential elements of his

case with respect to which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.


## IV. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for

summary judgment, the court must also consider the petition under the requirements set

forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in the State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).  Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id.   "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

# V.  DISCUSSION AS TO PROCEDURAL BAR

## A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas Petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a Petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

## 1.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the

requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a Petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there

is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a Petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the Petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if Petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

## 2.Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a

prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed,

he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier

default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state

procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also

Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to

raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a

procedural bar can be ignored and the federal court may consider the claim. Where a

Petitioner has failed to comply with state procedural requirements and cannot make the

required showing(s) of cause and prejudice, the federal courts generally decline to hear the

claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3.  Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a Petitioner before this court has failed to raise a claim in

state court, and is precluded by state rules from returning to state court to raise the issue,

he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997); <u>cert</u>.<u>denied,</u> 118 S.Ct. 102 (1997) citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288,297-98 (1989); and <u>George v. Angelone</u>, 100 F.3d 353,363 (4th Cir. 1996).

### 4.  <u>Cause and Actual Prejudice</u>

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987). In order to have such claims considered, a Petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure,  <u>Coleman v. Thompson</u>, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). A Petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); <u>Clozza v. Murray</u>, 913 F.2d 1092 (4th Cir. 1990), <u>cert. denied</u>, 499 U.S. 913 (1991); and <u>Clanton v. Muncy</u>, 845 F.2d 1238 (4th Cir. 1988), <u>cert. denied</u>, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." <u>Turner v. Jabe</u>, 58 F.3d 924 (4th Cir. 1995). However, if a Petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a

default. <u>Murray v. Carrier</u>, 477 U.S. at 492. To show actual prejudice, the Petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. <u>United States v. Frady</u>, 456 U.S. 152 (1982).

In the case of <u>Kornahrens v. Evatt,</u> 66 F.3d 1350 (4th Cir. 1995), <u>cert. denied</u> 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. <u>See</u> <u>Karsten v. Kaiser Foundation Health Plan</u>, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VI. ANALYSIS

The Respondent submits that the issues raised in this habeas petition are technically exhausted. However, Respondent asserts that the habeas petition should be dismissed.

[2]

---

[2]The undersigned notes that Respondent asserts that Petitioner's allegations in his petition are procedurally defaulted in that the state supreme court did not consider the merits of any issue raised on certiorari since collateral appellate counsel filed a <u>Johnson</u> Petition for Writ of Certiorari. Respondent argues that the South Carolina Supreme Court in <u>State v. Lyles</u>, ___ S.C. ____, 673 S.E.2d 811 (2009), made clear that the state appellate court's review pursuant to <u>Anders</u> or, by analogy <u>Johnson</u>, does not involve consideration of the merits of any issue. By this argument, respondent appears to argue that a Petitioner cannot exhaust any claim for habeas purpose by way of an <u>Anders</u> brief on direct appeal or a <u>Johnson</u> petition for writ of certiorari following denial of a PCR. However, three District Court cases have not agreed with respondent's argument. <u>See</u> <u>Ehrhardt v. Cartledge</u>, 2009 WL 2366095 (D.S.C. July 30, 2009); <u>Missouri v. Beckwith</u>, 2009 WL 3233521 (D.S.C. Sep. 29, 2009); <u>Singleton v. Eagleton</u>, 2009 WL 2252272

**Ground One**

In Ground One, Petitioner asserts that trial counsel was ineffective. Petitioner referenced his PCR allegations. Respondent addressed each allegation separately in the memorandum in support of the motion for summary judgment. For clarity, the undersigned will also address each claim individually.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A Petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  Strickland requires that:

> [T]he defendant must show that there is a reasonable

_____

(D.S.C. July 28, 2009). Respondent  presents no authority supporting its position, and the undersigned will address the claims on the merits and on Respondent's further arguments for summary judgment.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70). This law will be applied to each of the six issues addressed under this Ground One.

**1. Failure to request a continuance**

Petitioner argued at the PCR hearing that counsel was ineffective for failing to object to the second trial going forward, and for failing to move for a continuance to allow counsel the opportunity to get a transcript.

The trial judge granted a mistrial with regard to the first trial due to the fact that a search warrant was erroneously submitted to the jurors. Trial counsel noticed it and brought it to the court's attention and the court noted that this was not a prejudice that could be cured but that it was not exclusively the solicitor's fault in that trial counsel had agreed to the exhibits. Therefore, the trial judge granted a mistrial and ordered Petitioner to be retried. Trial counsel agreed that if they could get enough potential jurors and the pre-trial rulings remained the same, then the defense was ready to go forward with a second trial as soon as possible. Petitioner was tried by a new jury which trial began the next day.

At the PCR hearing, Petitioner testified that he believed a transcript would have helped counsel examine the boys.

At the PCR hearing, trial counsel testified that he did not make a motion for a continuance or request a transcript because he did not feel the motion would be granted and because the testimony was fresh in that they were proceeding with the second trial right away. Thus, counsel testified that it was strategy not to move for a continuance as he did not want to push the court or lose credibility with the court.(Tr. 696-701, 706-709, 712-715). In the Order of Dismissal, the PCR Court found as follows:

> Applicant has not carried his burden of proof under the Strickland test as set forth above. First, as to the transcript there is no evidence that obtaining a transcript would have been of value. Counsel indicated that they had trial notes and that since the second trial was convened the very next day that the testimony was fairly fresh in their minds. In the event counsel thought impeachable testimony was introduced a record would have been available through the court reporter to check and impeach the witness if necessary. As to counsel's failure to request a continuance, counsel testified that this was trial strategy and there is no evidence indicating anything to the contrary. The Court therefore finds counsel's conduct satisfactory as to strategically failing to make a continuance request and failing to request a transcript and dismisses Applicant's first allegation.

(Tr. 737).

As found by the PCR court, the Petitioner's trial counsel articulated a reasonable trial strategy regarding the decision not to request a continuance. See Whitehead v. State, 417 S.E.2d 530, 531 (S.C.1992) (reasonable trial strategy will not be held ineffective). Further, no evidence was presented on how obtaining the transcripts would have been of value in the second trial, especially when the court reporter was present with the testimony from the day before if it was needed. When considering a claim of ineffective assistance of counsel based on tactical decisions "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689. Thus, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, 844 F.2d 170 (4th Cir.1991). Therefore, it is recommended that this issue be dismissed.

## 2.  Failure to ensure no jurors from first trial were on a second panel

Petitioner alleges counsel was ineffective for failing to ensure that no jurors from the first panel in the first trial were placed on, or tainted the jury in the second panel in the second trial. However, Petitioner did not offer any evidence to support this allegation at the PCR hearing.

At the PCR hearing, trial counsel testified that he recalled that the judge ensured that jurors from the first panel would not be reselected. The PCR court found the following with regards to this issue:

19

Turning to the issue of the second jury panel, there is absolute no evidence in the record that anyone from the first jury served on the second jury, nor that there was any communication between members of the first and second jury. Applicant's second allegation is therefore also without merit and hereby dismissed.

(Tr. 737).

As stated, no evidence was presented that any juror from the first trial was a juror on the second trial or that there was communication between the jurors on the first trial and the jurors on the second trial. Thus, the record supports the decision of the PCR court, and it is recommended issue should be dismissed.

### 3.  Failure to call witnesses

Petitioner argued in this PCR allegation that "counsel was ineffective for failing to use another twelve year old boy as a defense witness to demonstrate that he had also been on trips with the Applicant and said nothing criminal ever happened to him; and failing to have witnesses at trial" and for "failing to bring up Applicant's visit with a Psychologist." At the PCR hearing, Petitioner testified that he told counsel about a boy named BM and showed him a letter from BM's mother in which she stated she did not think Petitioner would have done the things of which he was accused because he had been around her son. Petitioner also testified that he was evaluated by a psychologist to see if he could have committed the crime, but she was not called at trial.

Respondent argues that the issue fails on the merits as Petitioner failed to call any defense witnesses or psychologist to testify at the PCR hearing. (Tr. 717-719).

Counsel Greeley testified at the PCR hearing that he did not recall whether Petitioner had told him or his investigator about another 12 years old boy that had gone on

camping trips with Petitioner. (Tr. 702). Counsel Rhea testified at the PCR hearing that Petitioner was evaluated by a psychologist who was at the trial but she found nothing to indicate Petitioner was not competent. (Tr. 726-727).

The PCR court found as follows:

Turning to Applicant's allegation that counsel was ineffective for failing to call certain witnesses, the Court has no barometer which to judge this allegation. In order to determine whether trial counsel was ineffective in failing to call certain witnesses those witnesses would need to testify at the post-conviction relief hearing in order for the Court to determine what the witnesses would have testified to at trial and whether or not it would have been of any value. See Glover v. State, 318 S.C. 496, 458 S.E.2d 538 (1995). Applicant presented no witnesses at his PCR hearing other than himself and trial counsel and therefore the Court cannot determine whether this allegation has merit. Therefore, Applicant's allegation as to counsel's ineffectiveness in failing to call witnesses is dismissed.

As to Applicant's allegation regarding his visit with a Psychologist, Applicant's Psychologist was at trial on a competency issue, there was therefore no reason to call the Psychologist to testify as such, this allegation is also dismissed.

(Tr. 738).

The record supports the PCR court's rejection of this claim. Petitioner did not present any witness testimony from any alleged defense witnesses or testimony from the psychologist to support his allegations. Therefore, it is recommended that this issue be dismissed.

## 4. The Search

Petitioner argued at PCR that trial counsel was ineffective for failing to explore the search of his residence. Petitioner testified that he did not know who let the police in his house, and said no-one was there to let them in. (Tr. 721). At the PCR hearing, trial

counsel Greeley testified he made a motion to suppress.

Respondent argues that counsel moved to suppress the search of Petitioner's residence and his mobile home, but the judge found the evidence obtained from the search admissible which included nude pictures of the victims with notes written in Petitioner's handwriting on the back.

The PCR Court found as follows with regard to this issue:

> Applicant also alleges problems with the search of his residence which should have been explored. Specifically, applicant alleges that he was not present in the residence when served with the warrant. This allegation is also without merit. The law does not require a validly executed search warrant to be done in the resident's presence. Also, the difference in the time each warrant was served is of no importance since each were properly served.

(Tr. 738).

The record supports the PCR court's decision.[3] Counsel made a motion to suppress which was denied by the trial judge.[4] Thus, Petitioner failed to show that counsel's representation fell below an objective standard of reasonableness. Strickland, supra. Accordingly, it is recommended that this issue be dismissed.

## 5.  Bringing in co-counsel

Petitioner asserts that counsel Rhea was ineffective in bringing in co-counsel Greeley.

---

[3] A review of the transcript of the PCR hearing reveals that petitioner also testified that one of the victim's fathers was there during one of the searches. However, this issue was not addressed by the PCR court in its Order of Dismissal.

[4] A resident absent from his home during the warrant service and execution lacks standing to challenge the officer's compliance with the knock and announce statute. Mena v. Simi Valley, 226 F.3d 1031, 1035 n. 2 (9th Cir. 2000).

At PCR Greeley testified that he was asked to take the appointment but only agreed if Mr. Rhea was co-counsel due to the allegations and circumstances of the case. The PCR judge concluded as follows:

> With regards to counsel bringing in co-counsel, Applicant is misinformed on the facts. In fact, it was not John Rhea who brought Leland Greeley in but the Public Defender's office who requested that Leland Greeley take the case, at which point in time, Mr. Greeley agreed so long as John Rhea would serve as co-counsel. As such, this allegation is also dismissed.

(Tr. 738-739).

The record supports the PCR's conclusion. Further, Petitioner has failed to show any prejudice to having two counsel represent him at trial. As such, this issue fails, and it is recommended that this issue be dismissed.


**6. Failure to represent Petitioner adequately**

Petitioner made several general allegations as to ineffective assistance of counsel such as failure to represent him to the best of their ability, failing to object to the Solicitor's using evidence not disclosed during discovery, and failing to impeach witnesses.

Respondent argues that there is no evidence in the record as to any discovery issue, and Petitioner did not call at PCR the second victim or identify any specific issue as to the impeachment of the second witness. Further, Respondent asserts that, in any event, counsel did examine the second victim on why he did not initially tell police that Petitioner performed oral sex on him.

A review of the PCR court's order of dismissal reveals the PCR court concluded as follows:

> As to Applicant's bald allegations of general ineffective assistance of counsel

> in as much as alleging that counsel failed to represent the applicant to the best of their ability, failed to object to evidence used by the Solicitor's office but not disclosed under the discovery rules, and failing to impeach witness ---- ----- there is absolutely no evidence in the record to support any of these allegations.

(Tr. 739).

Petitioner did not present any evidence to support these general allegations. Thus, the record supports the conclusions of the PCR court.

As to Petitioner's Ground One with respect to ineffective assistance of counsel, the undersigned has reviewed the record and concludes that Respondent's motion for summary judgment should be granted on these issues under Ground One. As set out above under each individual issue, the record supports the PCR judge's finding that the Petitioner has not demonstrated that his attorneys' performance was deficient by showing that their representation fell below an objective standard of reasonableness and, further, he has not shown that the attorneys' performance actually prejudiced him.

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, these grounds are without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Thus, the undersigned recommends that the Respondent's motion for summary judgment be granted on Ground One.

**Ground Two**

In Ground Two, Petitioner asserts that the trial court abused its discretion in refusing the defense's motion to sequester the witnesses. Respondent argues this issue should be dismissed. Respondent contends that trial counsel moved for sequestration but the motion was denied by the trial judge stating his position was that there was not much value to it.

This issue was raised on direct appeal. The South Carolina Court of Appeals found no error stating as follows:

> The trial court may order the sequestration of witnesses upon its own motion or by motion of any party. State v. Tisdale, 338 S.C. 607, 616, 527 S.E.2d 389, 394 (Ct. App. 2000); Rule 615, SCRE. A party, however, "is not entitled to have witnesses sequestered as a matter of right."  Tisdale, 338 S.C. at 616, 527 S.E.2d at 394. In particular, "[a] person must not be sequestered from a proceeding adjudicating an offense of which he was a victim." S.C. Code Ann. 16-3-1550(B) (Supp. 2001). Thus, because both S and B were victim-witnesses, the trial court appropriately refused to sequester them.

(State v. Goins, Unpublished opinion No. 2003-UP-060).

A state court's decision on a question of state law is binding in federal court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n. 1 (4th Cir. 1999). As this issue pertains to a state court's decision based on state law, it is recommended that Respondent's motion for summary judgment be granted with respect to Ground Two.

**Ground Three**

In Ground Three, Petitioner asserts that the trial court erred in admitting evidence

of other alleged "bad acts' by Petitioner. Respondent argues that this issue was raised on direct appeal and dismissed. Further, Respondent argues that this issue is insufficient for federal relief in that there is no federal constitutional basis asserted at trial. In the memorandum, Respondent asserts as follows:

> The only basis was South Carolina evidentiary law and as a general rule, "admissibility of evidence is matter of state law, and only a contention that the [improper] admission of the evidence rendered the trial fundamentally unfair or violated a specific constitutional right will be considered in a federal collateral proceeding. Johnson v. Blackburn, 778 F.2d 1044, 1050 (5th Cir. 1985).

(Respondent's memorandum, p. 22).

On direct appeal, the South Carolina Court of Appeals concluded with respect to this issue that "the admission of evidence lies within the sound discretion of the trial court. State v. Smith, 337 S.C. 27, 522 S.E.2d 598 (1999). A trial court's ruling admissibility will not be reversed absent an abuse of discretion or the commission of legal error resulting in prejudice. State v. Hamilton, 344 S.C. 344, 543 S.E.2d 586 (Ct. App. 2001)." State v. Goins. Further, the Court of Appeals found that "[a]lthough Goins was indicted and tried for acts of sexual misconduct occurring on February 23, 1999, we agree with the trial court that evidence of other acts of sexual misconduct toward the boys and T falls within the common scheme or plan exception under Rule 404(b), SCRE, and Lyle."

The undersigned concludes that this is an issue of evidence and the court will not grant relief based on the state's own standards for sufficiency of the evidence. See Wilson v. Greene, 155 F.3d 396, 407 (4th Cir. 1998). Thus, it is recommended that this issue be dismissed and Respondent's motion for summary judgment granted with respect to this ground.

## VI. CONCLUSION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (docket entry #20) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 8, 2010
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**